UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINE LYNN SNYDER,

                        Case. No. 17-12147

        Plaintiff,             District Judge Laurie J. Michelson
                         Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Kristine Lynn Snynder ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Dock. #26] be DENIED and that Plaintiff's Motion for Summary Judgment [Dock. #22] be GRANTED to the extent that the case is remanded for further proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on August 25, 2014 alleging disability as of September 3, 2013 (Tr. 165-167).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on September 21, 2016 in Flint, Michigan before Administrative Law Judge ("ALJ") Andrew G. Sloss (Tr. 39).  Plaintiff, represented by attorney Elizabeth Marsero, testified (Tr. 42-52), as did Vocational Expert ("VE") Pauline McEachin (Tr. 53-54).  On January 13, 2017, ALJ Sloss found that Plaintiff was capable of performing her past relevant work as a waitress and head waitress (Tr. 32-33).   On May 5, 2017, the Appeals Council declined to review the administrative decision (Tr. 1-4).  Plaintiff filed suit in this Court on June 30, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born January 17, 1959, was four days short of her 58th birthday on the date of the administrative determination (Tr. 33, 167).  She completed four or more years of college and worked previously as a restaurant server (Tr. 196-197).  Her application for benefits alleges disability as a result of a neck injury resulting in fusion surgery, bipolar disorder, retrolisthesis,[1] headaches, and numbness and weakness of the left hand (Tr. 195).

---

[1]

Retrolisthesis, a back condition, "occurs when a single vertebra slips and moves back along the intervertebral disc underneath or above it." https://www.healthline.com/health/retrolisthesis.  (Last visited July 18, 2018).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

She received a Bachelor's degree in psychological counseling but was not licensed to practice (Tr. 42).  She held a valid driver's license and was able to drive (Tr. 43).  Her 2015 attempt to work as a landscape gardener failed due to the physical demands of the job (Tr. 43).  She worked formerly as a waitress and in the past two years had "assisted with opening" new restaurant locations by "training staff [and] servers" and getting "the restaurant up and running" for two week stints before going to a different location (Tr. 44).  She opined that the training work "might be a good opportunity [to] kind of take it down a notch as far as the physically demanding and mentally draining" requirements of being a server (Tr. 44).  She held both serving and supervisory positions in 2001 and 2002 at another restaurant (Tr. 44).  She supervised other staff but was never a manager (Tr. 45).  She also worked as a food preparer in the kitchen of a nursing facility (Tr. 45).

At present, Plaintiff's only source of income was selling things on eBay (Tr. 45).  She was unable to work due to two neck surgeries in a 13-month period with accompanying left arm and hand numbness (Tr. 46). Despite the surgeries, she regularly experienced level "4" to "7" neck pain on a scale of 1 to 10 (Tr. 47).  She was diagnosed with bipolar disorder in 2008 but the symptoms were "pretty well stabilized" with medication (Tr. 47).  She was able to prepare meals and take care of her house (Tr. 47).  She was able to grocery shop, attend church, and perform care giving chores for her elderly parents (Tr. 48).

In response to questioning by her attorney, Plaintiff reported that left hand weakness caused her to drop items two or three times a week (Tr. 49). She was able to carry up to 10 pounds provided that she used both hands (Tr. 49). She was limited to lifting three pounds with her left hand (Tr. 50). She was unable to sit for more than 60 minutes or stand for more than 30 (Tr. 50). She was unable to blow dry her hair for more than 30 seconds at a time due to left arm numbness (Tr. 51). The neck and left arm pain caused concentrational problems (Tr. 52).

### B. The Medical Records

#### 1. Records Related to Plaintiff's Treatment

A September, 2013 MRI of the cervical spine showed disc extrusion and severe central canal stenosis at C6-C7 with additional disc extrusion at C5-C6 (Tr. 259, 261, 266, 298). Taha Jamil, M.D., seconding the advice of surgeon Lisa L. Guyot, M.D., recommended a cervical discectomy and fusion (Tr. 264, 277). A discectomy was performed the second week of the following month without complications (Tr. 281). Imaging studies of the cervical spine following the discectomy showed good alignment (Tr. 291-294, 296). Dr. Guyot found that Plaintiff could return to work the first week of December (Tr. 273). November, 2013 physical therapy records note that Plaintiff was recovering "very well" from surgery (Tr. 268). The following month, Dr. Guyot noted that Plaintiff planned to return to work on December 19, 2013 but was restricted to lifting 20 pounds for four weeks (Tr. 271).

-4-

January, 2014 records by Mona Perry, M.D. note that a recent fall aggravated Plaintiff's neck pain (Tr. 367). Dr. Guyot's March, 2014 records note Plaintiff's report of throbbing neck pain and left arm weakness after lifting two "big buckets of ice" (Tr. 270). She demonstrated 4/5 strength with the left arm (Tr. 269). An MRI from the same month showed neuroforaminal narrowing at C7-T1 which had progressed since an earlier examination (Tr. 303). James C. Culver noted that Plaintiff's report of headaches were attributable to the neck condition (Tr. 304). April, 2014 EMG studies of the left upper extremity showed mildly abnormal findings (Tr. 310-311). Pain management records from the same month note that Plaintiff underwent a series of cervical epidural injections (Tr. 302). At the end of the month, Plaintiff reported a 65 to 70 percent improvement in symptoms (Tr. 302-303). May, 2014 records by Henry Hagenstein, D.O. note Plaintiff's report of left arm pain and weakness (Tr. 312). Dr. Hagenstein recommended continued conservative management (Tr. 314). June physical therapy records note Plaintiff's report of moderate left elbow pain and low back, hip, and upper leg pain (Tr. 328, 331-332). Dr. Perry noted Plaintiff's report of good results from chiropractic treatment (Tr. 349). July, 2014 physical therapy records note an improvement in the upper extremity symptoms (Tr. 320). Records by Dr. Perry note cervical spasms and tenderness (Tr. 322).

August, 2014 records by Peter L. Bono, D.O., note reduced upper extremity strength, and "evidence of pseudarthrosis" (Tr. 339). He recommended cervical decompression and fusion surgery (Tr. 339). In September, 2014, Dr. Culver declined to perform a disability

determination examination (Tr. 309).  Chiropractic notes from the following month note Plaintiff's report of continued headaches (tr. 445).  In November, 2014, Plaintiff underwent a spinal fusion with an iliac crest bone graft at C5-7 (Tr. 400, 408-409).  The following month, Dr. Bono observed good results from the cervical surgery, noting that Plaintiff should decrease her opioid consumption (Tr. 435).  Chiropractic records note a recommendation of conservative treatment for lumbar back pain (Tr. 443).

In March, 2015, Plaintiff reported left hand numbness and tingling (Tr. 449).  EMG studies of the left upper extremity were abnormal (Tr. 442, 483).  April, 2015 records note that Plaintiff was prescribed an elbow brace for a diagnosis of left cubital tunnel syndrome (Tr. 422, 442).  Notes from the following month state that Plaintiff would proceed with lift cubital tunnel surgery when she quit smoking (Tr. 417).  In June, 2015, Dr. Bono noted a diagnosis of left ulnar neuropathy (Tr. 427).  October, 2015 records note that Plaintiff was admitted to the hospital for dizziness (Tr. 441).

In November, 2015, Dr. Perry found that Plaintiff could perform frequent postural activity except for a preclusion on climbing ladders and crawling (Tr. 439).  She found that Plaintiff was precluded from exposure to unprotected heights and dangerous machinery (Tr. 439).  She found that due to chronic pain, Plaintiff would be off task for more than 20 percent of the workday (Tr. 439).  She found that Plaintiff could carry 20 pounds occasionally and 10 frequently and stand or walk up to one third of the time for up to four hours (Tr. 440).  She found that Plaintiff was limited to occasional reaching (overhead and

otherwise) and fingering on the left but was capable of otherwise frequent manipulative activity (Tr. 440).  Dr. Perry's treating notes from the same month note numbness of the fourth and fifth left fingers and a lack of "good dexterity" (Tr. 460).  In June, 2016  James Garfield, M.D. found that Plaintiff was limited to lifting 10 pounds on an occasional basis (Tr. 480).  He found that Plaintiff was limited to sitting and standing for one hour a day each and could walk up to two hours a day (Tr. 480).  He limited Plaintiff to occasional manipulative activity with the right arm and precluded all manipulative activity with the left except for occasional handling and feeling (Tr. 480).  He precluded all kneeling, crouching, and crawling with a limitation to occasional climbing, balancing, and stooping (Tr. 481).  He found that Plaintiff was precluded from unprotected heights, dangerous machinery, pulmonary irritants and limited to occasional activity/exposure to driving, temperature extremes, humidity, and noise (Tr. 481).  He found that she could use right foot controls occasionally but was precluded from the use of left foot controls (Tr. 481).  He found that she would be off task due to pain for over 20 percent of the workday and required four 15 to 20 minute rest breaks each day (Tr. 481).

## 2. Non-Treating Sources

In November, 2014, Asit Kumar Ray, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of October, 2013 fusion surgery and a second surgery the following week (Tr. 390).  Plaintiff reported left arm weakness and headaches (Tr. 390).  Dr. Ray observed that Plaintiff was not wearing a neck brace (Tr. 390).

He noted that Plaintiff was independent in self care activities (except hair care) and was able to drive (Tr. 390-391).

Dr. Ray noted that Plaintiff did not experience any lower extremity deficiencies (Tr. 391). He found no neurological abnormalities of the elbows or wrists, noting that she could make a fist with both hands and demonstrated good left hand coordination (Tr. 391, 394). Dr. Ray concluded that Plaintiff "would be able to perform her usual and customary activities including her occupational duties without any restrictions" (Tr. 392). The following month, Carrie Gleason, Psy.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of a history of anxiety and bipolar disorder (Tr. 412). Plaintiff denied current psychological problems (Tr. 412). Plaintiff reported that she used a computer and did crafts but was unable to lift more than five pounds due to recent surgery (Tr. 413). Dr. Gleason found that Plaintiff did not experience concentrational problems or difficulty getting along with others but that her ability "to adapt to change and stress in the workplace" was moderately impaired (Tr. 415).

In January, 2015, Jerry Csokasy, Ph.D. performed a non-examining review of the record on behalf of the SSA, finding that Plaintiff experienced only mild limitation in activities of daily living, social functioning, and concentration, persistence, and pace (Tr. 64-65).

### C.  Vocational Testimony

VE MacEachin classified Plaintiff's past relevant work as a head waitress as exertionally light and skilled and job as a food service worker as medium/unskilled[2] (Tr. 53). The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience with the following limitations:

> [L]imited to light work, except she is limited to frequent handling and fingering with her left, non-dominant upper extremity[.] [W]ould she be able to perform any of her past work? (Tr. 53).

The VE responded that the individual could perform Plaintiff's past relevant work as a head waitress but would be unable to perform the job of food service worker (Tr. 53).  The VE testified that the need to be off task for more than 10 percent of the workday, or, the need to miss more than two days of work each month would preclude all work (Tr. 54).  She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for the testimony pertaining to being off task and absenteeism which was based on her own profession experience (Tr. 54).

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

**D.  The ALJ's Decision**

Citing the medical records, ALJ Sloss found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical spine and cubital tunnel syndrome of the left upper extremity" but that none of the conditions met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24-26).  The ALJ found that Plaintiff had only mild limitation in activities of daily living, social functioning, and concentration, persistence, and pace (Tr. 25).  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work "except she is limited to frequent handling and fingering with her left (non-dominant) upper extremity" (Tr. 26). Citing the VE's testimony, the ALJ determined that  Plaintiff was able to perform her past relevant work as a head waitress (Tr. 32, 53).

The ALJ discounted Plaintiff alleged degree of limitation, noted that the record did not support the claims of limitation in standing, sitting, or walking (Tr. 30).  He noted that Plaintiff was able to cook, perform housework, shop, and care for her parents (Tr. 30).  He accorded "great weight" to Dr. Ray's opinion but noted that "limitations consistent with his findings of decreased grip strength on the left are appropriate and incorporated into the above-described residual functional capacity" (Tr. 30).  The ALJ accorded "significant weight" to Dr. Perry's treating opinion except for her claim that Plaintiff would be off task for 20 percent of the workday due to chronic pain (Tr. 31).  The ALJ noted that Plaintiff's activities of daily living and ability to work out at a gym four to five times a week

undermined Dr. Perry's finding that Plaintiff would be off task for significant portions of the day (Tr. 31).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

-11-

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

In her primary argument for remand, Plaintiff disputes the ALJ's statement that he adopted all of Dr. Perry's November, 2015 assessment pertaining to limitations of the left upper extremity, noting that the limitations in the RFC do not reflect Dr. Perry's findings. *Plaintiff's Brief,* 14-17 (*citing* Tr. 26, 31), *Docket #22,* Pg ID 590.[3]

---

[3]

Plaintiff also makes short, unsupported argument that the ALJ erred by according

In November, 2015, Dr. Perry found that Plaintiff was limited to occasional reaching (overhead and otherwise) and fingering in the left upper extremity (Tr. 440).  She found that Plaintiff was otherwise capable of frequent manipulative activity in both extremities[4] (Tr. 440).

In the administrative opinion, the ALJ stated in relevant part that he accorded "significant weight" to Dr. Perry's finding that Plaintiff was limited to occasional reaching and fingering with the left arm, noting that this portion of the treating opinion was consistent with the "above-described [RFC]" (Tr. 31).  However, contrary to the ALJ's statement, the actual RFC contains a *frequent* limitation in "handling and fingering" (Tr. *compare* 26, 31).  Contrary to the ALJ's statement that he adopted Dr. Perry's limitations of the left upper extremity, the RFC does not contain any limitation in reaching and allows for frequent fingering, in contrast to Dr. Perry's finding that Plaintiff was limited to *occasional* fingering.  In short, the RFC does not reflect the ALJ's statement that he adopted Dr. Perry's manipulative findings.  Likewise, the hypothetical question (forming the basis of the finding

---

"great weight" to Dr. Ray's consultative findings but also adopting a portion of Dr. Perry's treating findings.  *Plaintiff's Brief* at 11-12.  Notwithstanding the errors discussed below, Defendant is correct that an ALJ is permitted to draw from multiple medical sources in whole or part in crafting the RFC.  *Defendant's Brief* at 13-14 (*citing Rudd v. CSS,* 531 F. App'x 719, 728 (6th Cir. September 5, 2013);  SSR 96-8p, 1996 WL 374184, at *2 (June 2, 1996).

[4]

In Social Security parlance, occasional activity "means occurring from very little up to one-third of the time" whereas "frequent" refers to activity "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5–6 (January 1, 1983).

that Plaintiff could perform her past relevant work) contains only a frequent limitation in "handling and fingering" (Tr. 53).

Defendant cites *DOT* § 311.477-030, which states that the position of waitress does not require more than occasional fingering. *Defendant's Brief,* 10-11, *Docket #26,* Pg ID 614 (*citing* 1991 WL 672688 (1991)).[5] Defendant argues that the RFC finding that Plaintiff could finger frequently is a harmless error, given that the actual requirements of the job are consistent with Dr. Perry's findings. *Id.* Defendant notes further that the RFC for frequent handling mirrors Dr. Perry's findings and the *DOT* requirements for frequent handling for the job of waitress. *Id.* at 10-11 (*citing* 1991 WL 672688).

In contrast, Defendant notes that the *DOT* requires frequent reaching for the position of waitress*. Id.* at 10-12. Defendant concedes that the *DOT* requirement stands at odds with Dr. Perry's finding that Plaintiff was limited to occasional reaching in all directions with the left upper extremity and that the RFC makes no provisions for limitations in reaching. *Id.* However, Defendant argues that because the limitations in reaching found by Dr. Perry pertained only to the non-dominant arm, Plaintiff's ability to perform frequent reaching with the right arm cures the error. *Id.* at 12-13. Defendant cites *Lesley v. Colvin,* 2015 WL 10710837, at *5 (D. Nev. Nov. 13, 2015)(collecting cases) which states that "a claimant with limited use of one arm is not precluded from performing a job with frequent reaching, unless

_____

[5]The ALJ also found that Plaintiff could perform her past relevant work as a head waitress. *DOT* § 311.137-022. That position has the same manipulative requirements as the waitress position. DICOT 311.137-022.

the *DOT* job description explicitly requires bilateral reaching."

However, more recently, the Ninth Circuit rejected the contention that the *DOT's* failure to expressly require bilateral reaching in a job description implies that only unilateral reaching is required. *Lamear v. Berryhill,* 865 F.3d 1201, 1206 (9th Cir. 2017)(Where the *DOT* was silent as to whether the reaching requirements of the jobs pertained to both hands, "we cannot determine from this record, the *DOT*, or our common experience whether the jobs in question [office helper, mail clerk, or parking lot cashier] require both hands")(*see also Pearson v. Colvin*, 810 F.3d 204, 211 (C.A.4 (Va.),2015)("Although the [*DOT*] does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, [it's] broad definition of 'reaching' means that they certainly may require such reaching").

Here, while the *DOT* does not state that the position of waitress requires frequent bilateral reaching, the *DOT* job description of waitress indicates that bilateral reaching may be required on a frequent basis:

> "Relays order to kitchen and serves courses from kitchen and service bars. . . . May ladle soup, toss salads, portion pies and desserts, brew coffee, and perform other services as determined by establishment's size and practices. May clear and reset counters or tables at conclusion of each course."

Likewise, the  "common experience" of anyone who has ever eaten in a restaurant includes observations that waitresses are required to lift trays using both hands and that serving food often requires holding a tray with one outstretched arm while picking up a plate and reaching toward the guest's table with the other.  Assuming that a server is required to

-15-

pick up more than one dish, clearing a table between courses also requires bilateral reaching.

Because at best it is unclear whether the position of waitress requires frequent bilateral reaching, the Court cannot say that the ALJ's error (compounded by the discrepancy between the rationale for the RFC and the actual RFC and hypothetical question) was harmless. As such, a remand for further vocational testimony is required. *See Bobo v. Berryhill*, 2017 WL 7051997, at *23 (N.D.Ohio September 21, 2017)(It is for the VE, "not for this Court to decide" the manipulative requirements of the job findings). As in *Bobo*, "[m]ore explanation is needed before the Court can determine if the ALJ decision on this issue is supported by substantial evidence."

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Dock. #26] be DENIED and that Plaintiff's Motion for Summary Judgment [Dock. #22] be GRANTED to the extent that the case is remanded for further proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 24, 2018                              s/R. Steven Whalen_____
                                                  R. STEVEN WHALEN
                                                  UNITED STATES MAGISTRATE JUDGE

_____

### CERTIFICATE OF SERVICE

I hereby certify on July 24, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 24, 2018.

                                                  s/Carolyn M. Ciesla_____
                                                  Case Manager for the
                                                  Honorable R. Steven Whalen